UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

MATTHEW SMART,                                          :
                                                        :
                              Plaintiff,                :
                                                        :
              -against-                                 :
                                                        :        **FIRST AMENDED**
THE CITY OF NEW YORK; WILFRED GUZMAN;                   :        **COMPLAINT**
SHEKELE MUHAMMAD; NICHOLAS PASCHITTI;                   :
JAMES PARIS; JWANN LAYTON; JOHN McCUE;                  :        **Jury Trial Demanded**
and JOHN/JANE DOES, Nos. 1-10 (the names John           :
and Jane Doe being fictitious, as the true names are    :        **ECF Case**
presently unknown to plaintiff),                        :
                                                        :        15 Civ. 1405 (RRM) (PK)
                              Defendants.                :
------------------------------------------------------------------------x

Plaintiff MATTHEW SMART, by his attorney, Robert T. Perry, respectfully alleges as follows:

<u>**NATURE OF ACTION**</u>

1.      Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violation of his civil rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts supplemental claims under New York law.

<u>**JURISDICTION AND VENUE**</u>

2.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

3.      The Court has jurisdiction over plaintiff's federal law claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4.      The Court has jurisdiction over plaintiff's supplemental state law claims under 28 U.S.C. § 1367.

5.     Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to plaintiff's claims occurred in this district.

## JURY DEMAND

6.     Plaintiff demands trial by jury of all issues properly triable thereby pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7.     Plaintiff MATTHEW SMART is a resident of Kings County in the City and State of New York.

8.     Defendant THE CITY OF NEW YORK ("the City") is, and was at all times relevant herein, a municipal corporation duly organized and existing under the laws of the State of New York.  The City maintains the New York City Police Department ("NYPD"), which acts as the City's agent in the area of law enforcement and for which the City is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

9.     Defendant WILFRED GUZMAN (Shield No. 20424) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD.  During the relevant times herein, defendant Guzman was a police officer assigned to Police Service Area 3 ("PSA 3").  Defendant Guzman is being sued in his individual capacity.

10.     Defendant SHEKELE MUHAMMAD (Shield No. 1070) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD.  During the relevant times herein, defendant Muhammad was a police officer assigned to PSA 3.  Defendant Muhammad is being sued in her individual capacity.

11.     Defendant NICHOLAS PASCHITTI (Shield No. 26946) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Paschitti was a police officer assigned to PSA 3. Defendant Paschitti is being sued in his individual capacity.

12.     Defendant JAMES PARIS (Shield No. 23131) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Paris was a police officer assigned to PSA 3. Defendant Paris is being sued in his individual capacity.

13.     Defendant JWANN LAYTON (Shield No. 03917) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Layton was a sergeant assigned to PSA 3. Defendant Layton is being sued in his individual capacity.

14.     Defendant JOHN McCUE (Shield No. 15751) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant McCue was a police officer assigned to PSA 3. Defendant McCue is being sued in his individual capacity.

15.     All "John Doe" and "Jane Doe" defendants are, and were at all relevant times herein, duly appointed agents, employees, officers, and servants of the NYPD. The Doe defendants are being sued in their individual capacities.

16.     At all relevant times herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, employees, officers, and servants of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties. At all relevant times herein, the individual

3

defendants were acting for and on behalf of the NYPD, with the power and authority vested in them as agents, employees, officers, and servants of the NYPD.

17.     At all relevant times herein, the individual defendants acted jointly and in concert with each other.  Each individual defendant had the duty and the opportunity to protect plaintiff from the unlawful actions of the other individual defendants but each individual defendant failed and refused to perform such duty, thereby proximately causing plaintiff's injuries.

## STATEMENT OF FACTS

18.     On the evening of Saturday, June 21, 2014, plaintiff was lawfully present in the first-floor apartment at 474 Marcy Avenue in Brooklyn, New York, where plaintiff lives with his wife and stepson.

19.     At about 11:00 p.m., plaintiff and his wife began to argue about a family matter.

20.     On information and belief, a neighbor called 911.

21.     Shortly thereafter, a number of police officers, including defendants Guzman, Muhammad, Paris, Paschitti, Layton, and McCue, arrived at 474 Marcy Avenue.

22.     Hearing a knock, plaintiff's wife opened the door to the apartment.

23.     Four police officers -- defendants Guzman, Muhammad, Paris, and Paschitti -- entered the apartment.

24.     In response to defendant Muhammad's inquiry, plaintiff's wife denied that plaintiff had struck her or otherwise committed any crime or offense.

25.     Plaintiff nonetheless was handcuffed behind his back -- excessively tightly -- and dragged from the apartment to a nearby police van.

26.      On the way to the van, officers smashed plaintiff's head into an elevator door, smashed his head against the exit door to the apartment building, pushed him against and almost over a four-foot-high metal fence, and smashed his head against the tail light to the police van.

27.      Inside the van, an officer or officers struck plaintiff with a baton on the left shoulder and struck plaintiff on the head with a radio.

28.      There was no probable cause to believe plaintiff had committed any crime or offense.

29.      The officers used more force than was reasonably necessary to take plaintiff into custody.

30.      Plaintiff did not provoke the police assault on him and offered no physical resistance.

31.      Plaintiff was taken to PSA 3, where he was held overnight in a cell in excessively tight handcuffs.

32.      Plaintiff repeatedly asked officers at PSA 3 to remove or loosen the handcuffs but they ignored his requests.

33.      While at PSA 3, plaintiff was made to remove his clothes and squat for inspection of his anal cavity without probable cause or reasonable suspicion to believe that he had committed any crime or offense.

34.      No drugs, weapons, other contraband, or any evidence of criminal activity were found on plaintiff's person or in his possession.

35.      The next morning, Sunday, June 22, 2014, plaintiff was taken to the Brooklyn Detention Complex at 275 Atlantic Avenue in downtown Brooklyn.

36.     Later that day, plaintiff was released from custody without charges, after spending most of the day in custody.

37.     On information and belief, the Kings County District Attorney's office concluded that there was no probable cause to arrest or prosecute plaintiff for any crime or offense.

38.     All of the above police misconduct occurred as a direct result of unconstitutional customs, policies, and practices of the City and the NYPD, including, without limitation: the inadequate screening, hiring, retention, training, and supervision of police officers; arresting minorities (such as plaintiff) without probable cause to believe that they had committed any crime or offense; manufacturing false evidence; and arresting innocent persons to meet "productivity goals" (i.e., arrest quotas) and for professional advancement, overtime compensation, and/or other objectives outside the ends of justice.

39.     The existence of the foregoing customs, polices, and practices may be inferred from repeated occurrences of similar wrongful conduct, as documented in recent civil rights actions filed against the City in the United States District Courts for the Eastern and Southern Districts of New York.

40.     The City and the NYPD are aware from the above-noted lawsuits, as well as from notices of claims filed with the City's Office of Comptroller and complaints filed with the NYPD's Internal Affairs Bureau and the City's Civilian Complaint Review Board, that NYPD officers: arrest minorities without probable cause to believe that they had committed any crime or offense; manufacture false evidence; and arrest innocent persons in order to meet "productivity goals" (i.e., arrest quotas) and for professional advancement, overtime compensation, and/or other objectives outside the ends of justice.

6

41.     In denying the City's motion to dismiss a municipality liability claim for failure to

state a claim for relief in *Colon v. City of New York*, No. 09 Civ. 8 (JBW), 2009 WL 4263362

(E.D.N.Y. Nov. 25, 2009), the Honorable Jack B. Weinstein, United States District Judge,

observed:

> Informal inquiry by the court and among the judges of this court, as well as
> knowledge of cases in other federal and state courts, has revealed anecdotal
> evidence of repeated, widespread falsification by arresting police officers of the
> New York City Police Department.  Despite numerous inquiries by commissions
> and strong reported efforts by the present administration through selection of
> candidates for the police force stressing academic and other qualifications, serious
> training to avoid constitutional violations, and strong disciplinary action within
> the department, there is some evidence of an attitude among officers that is
> sufficiently widespread to constitute a custom or policy by the city approving
> illegal conduct of the kind now charged.

*Id.* at *2.

42.     Seemingly acknowledging the problem, then New York City Police

Commissioner Raymond E. Kelly stated, "When it happens, it's not for person gain.  It's more

for convenience."  Christine Hauser, *Few Results for Reports of Police Misconduct*, N.Y. Times,

Oct. 5, 2009, at A19.

43.     Since 2005, the NYPD has refused to prosecute 40% of the cases referred by the

Civilian Complaint Review Board ("CCRB") for prosecution.  Christine Hauser, *Few Results for*

*Reports of Police Misconduct*, N.Y. Times, Oct. 5, 2009, at A19.  And only 25% of the cases

found substantiated by the CCRB resulted in NYPD discipline more severe than verbal

instructions. *Id.*

44.     The foregoing customs, policies, and practices constituted deliberate indifference

to plaintiff's safety, well-being, and constitutional rights.

45.     The foregoing customs, policies and practices were the direct and proximate cause

of the constitutional violations suffered by plaintiff.

7

46.     The foregoing customs, policies, and practices were the moving force behind the constitutional violations suffered by plaintiff.

47.     As a result of the foregoing, plaintiff sustained, *inter alia*, physical injuries, emotional distress, mental anguish, shock, fright, apprehension, embarrassment, humiliation, loss of liberty, physical restraints, and violation of his constitutional rights.

## FIRST CLAIM FOR RELIEF

### (False Arrest Claim Under 42 U.S.C. § 1983)

48.     Plaintiff repeats and realleges paragraphs "1" through "47" with the same force and effect as if they were fully set forth herein.

49.     Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned without probable cause to believe that plaintiff had committed any crime or offense, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM FOR RELIEF

### (Excessive Force Claim Under 42 U.S.C. § 1983)

50.     Plaintiff repeats and realleges paragraphs "1" through "49" with the same force and effect as if they were fully set forth herein.

51.     Defendants, acting in concert and within the scope of their authority, used objectively unreasonable force in arresting plaintiff, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## THIRD CLAIM FOR RELIEF

### (Unlawful Strip Search Claim Under 42 U.S.C. § 1983)

52.     Plaintiff repeats and realleges paragraphs "1" through "51" with the same force and effect as if they were fully set forth herein.

53.     Defendants, acting in concert and within the scope of their authority, caused plaintiff to be strip searched without probable cause or reasonable suspicion to believe that plaintiff had committed any crime or offense, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## FOURTH CLAIM FOR RELIEF

### (Failure to Intervene Claim Under 42 U.S.C. § 1983)

54.     Plaintiff repeats and realleges paragraphs "1" through "53" with the same force and effect as if they were fully set forth herein.

55.     Each individual defendant had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, despite having had a realistic opportunity to do so, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## FIFTH CLAIM FOR RELIEF

56.     Plaintiff repeats and realleges paragraphs "1" through "55" with the same force and effect as if they were fully set forth herein.

57.    Defendants, singly and collectively, acting under color of state law, engaged in conduct that constituted customs, polices, and practices of the City and the NYPD forbidden by the Constitution of the United States.

58.    These customs, policies, and practices included, but were not limited to: arresting minorities (such as plaintiff) without probable cause to believe that they had committed any crime or offences; manufacturing false evidence; and arresting innocent persons to meet "productivity goals" (i.e., arrest quotas) and for professional advancement, overtime compensation, and/or other objectives outside the ends of justice.

59.    In addition, the City and the NYPD have engaged in a custom, policy, and practice of inadequate screening, hiring, retention, training and supervising police officers.

60.    The foregoing customs, policies, and practices constituted deliberate indifference to plaintiff's safety, well-being, and constitutional rights.

61.    The foregoing customs, policies, and practices were the direct and proximate cause of the constitutional violations suffered by plaintiff.

62.    The foregoing customs, policies, and practices were the moving force behind the constitutional violations suffered by plaintiff.

63.    The foregoing customs, policies, and practices deprived plaintiff of the right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## Supplemental State Law Claims

64.    Plaintiff repeats and realleges paragraphs "1" through "63" with the same force and effect as if they were fully set forth herein.

10

65.     Within ninety (90) days after the claims herein arose, plaintiff duly served upon, presented to, and filed with the City a Notice of Claim setting forth all facts and information required under New York General Municipal Law § 50-e.

66.     More than thirty (30) days have elapsed since the presentation of plaintiff's claims to the City.  The City has wholly neglected or refused to make an adjustment or payment thereof.

67.     This action was commenced within one (1) year and ninety (90) days after the claims accrued.

68.     Plaintiff has complied with all conditions precedent to maintaining this action.

## SIXTH CLAIM FOR RELIEF

### (False Arrest Claim Under New York Law)

69.     Plaintiff repeats and realleges paragraphs "1" through "68" with the same force and effect as if they were fully set forth herein.

70.     Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned without probable cause to believe that plaintiff had committed any crime or offense, and without any warrant or authority to do so.

## SEVENTH CLAIM FOR RELIEF

### (Assault Claim Under New York Law)

71.     Plaintiff repeats and realleges paragraphs "1" through "70" with the same force and effect as if they were fully set forth herein.

72.     Defendants, acting in concert and within the scope of their authority, placed plaintiff in apprehension of imminent harmful and offensive bodily contact.

## EIGHTH CLAIM FOR RELIEF

### (Battery Claim Under New York Law)

73.     Plaintiff repeats and realleges paragraphs "1" through "72" with the same force and effect as if they were fully set forth herein.

74.     Defendants, acting in concert and within the scope of their authority, made offensive contact with plaintiff without privilege or consent.

## NINTH CLAIM FOR RELIEF

### (Unlawful Strip Search Claim Under New York Law)

75.     Plaintiff repeats and realleges paragraphs "1" through "74" with the same force and effect as if they were fully set forth herein.

76.     Defendants, acting in concert and within the scope of their authority, caused plaintiff to be strip searched without probable cause or reasonable suspicion to believe that plaintiff had committed any crime or offense.

## TENTH CLAIM FOR RELIEF

### (*Respondeat Superior* Claim Under New York Law)

77.     Plaintiff repeats and realleges paragraphs "1" through "76" with the same force and effect as if they were fully set forth herein.

78.     The City is vicariously liable for the acts of their employees and agents who were on duty and acting in the scope of their employment when they engaged in the above unlawful conduct.

## ELEVENTH CLAIM FOR RELIEF

### (Negligent Screening, Hiring, and Retention Claim Under New York Law)

79.     Plaintiff repeats and realleges paragraphs "1" through "78" with the same force and effect as if they were fully set forth herein.

80.     The City failed to use reasonable care in the screening, hiring, and retention of the NYPD employees who participated in the above unlawful conduct.

## TWELFTH CLAIM FOR RELIEF

### (Negligent Training and Supervision Claim Under New York Law)

81.     Plaintiff repeats and realleges paragraphs "1" through "80" with the same force and effect as if they were fully set forth herein.

82.     The City failed to use reasonable care in the training and supervision of the NYPD employees who participated in the above unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief jointly and severally against all the

defendants:

(A)   Compensatory damages in an amount to be determined at trial:

(B)   Punitive damages in an amount to be determined at trial;

(C)   Reasonable attorney's fees and costs of this litigation; and

(D)   Such other relief as this Court deems just and proper.

Dated: Brooklyn, New York
       November 27, 2015

Respectfully submitted,

*Robert T. Perry*

ROBERT T. PERRY (RP-1199)
45 Main Street, Suite 230
Brooklyn, New York 11201
(212) 219-9410
*Attorney for Plaintiff*

cc:   Okwede N. Okoh, Esq. (*via ECF*)
      Assistant Corporation Counsel
      Special Federal Litigation Division
      New York City Department of Law
      100 Church Street
      New York, New York 10007
      *Attorney for Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

MATTHEW SMART,                                          :
                                                       :
                           Plaintiff,                  :
                                                       :
            -against-                                  :
                                                       :
THE CITY OF NEW YORK; WILFRED GUZMAN;      :         15 Civ. 1405 (RRM) (PK)
SHEKELE MUHAMMAD; NICHOLAS PASCHITTI;      :
JAMES PARIS; JWANN LAYTON; JOHN McCUE;      :
and JOHN/JANE DOES, Nos. 1-10 (the names John     :
and Jane Doe being fictitious, as the true names are   :
presently unknown to plaintiff),                       :
                                                       :
                           Defendants.                 :
------------------------------------------------------------------------x


**FIRST AMENDED COMPLAINT**


ROBERT T. PERRY
45 Main Street, Suite 230
Brooklyn, New York 11201
(212) 219-9410
*Attorney for Plaintiff*